**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY LAURA SMITH-BROWN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ULTA BEAUTY, INC. <br><br> Defendant. | Case No.: <br><br> Judge: <br><br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Kimberley Laura Smith-Brown ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to facts pertaining to herself and on information and belief as to all other matters, by and through her undersigned counsel, brings this class action complaint against defendant Ulta Beauty, Inc. ("Defendant" or "Ulta").

**NATURE OF THE ACTION**

1.      This consumer class action arises out of Defendant's practice of misrepresenting used cosmetics returned to its retail locations as new, and reselling these used products to unsuspecting consumers.

2.      Earlier this month, a former Ulta employee disclosed that "whenever a customer would return a product, [Ulta employees] were told by managers to repackage / reseal the item and put it back on the shelf."  According to this former employee, Ulta would restock and resell used cosmetics, among many other products.

1

3.     After this whistleblower publicized her allegations on Twitter, dozens of other current and former Ulta employees from retail locations all over the country confirmed that substantially similar practices also occurred at the Ulta stores where they worked.  Indeed, many Ulta employees commented that they would not shop at Ulta as a result of these unsanitary practices.

4.     Despite the widespread internal knowledge of these deceptive, unfair and unsanitary practices, Ulta has continued to deceive consumers for years, repackaging, restocking and reselling ***used beauty products including cosmetics*** at full price ***as if they were new***.

5.     As a result of Defendant's deceptive and unfair practices, Plaintiff and the other Class members did not receive that which was promised.  Had they known of Defendant's policy and practice of repackaging, restocking and reselling used cosmetics, Plaintiff and the other members of the Class would have paid less for the cosmetics they purchased or would not have purchased them at all.

6.     While this case is solely about the financial damage Defendant has caused to Plaintiff and the Class, Ulta's practice of restocking and selling used cosmetics as new to unsuspecting consumers put the health of Plaintiff and other members of the Class at risk.

7.     Accordingly, Plaintiff brings this action on behalf of herself and all other similarly situated consumers to recover the amounts Plaintiff and the other Class members overpaid, to prevent Defendant from continuing to engage in its unlawful, deceptive, unfair, and unsanitary conduct, and to correct the false perception it has created in the marketplace through its misrepresentations and omissions of material facts.

## JURISDICTION AND VENUE

8.      The Court has original subject matter jurisdiction over the case under 28 U.S.C. § 1332(d) because the case is brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars, excluding interest and costs.

9.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendant engaged in substantial conduct relevant to Plaintiff's claims within this District, has its principal place of business in this District, and has caused harm to Class members residing within this District.

## PARTIES

10.      Plaintiff Kimberley Laura Smith-Brown ("Smith-Brown") is a citizen of the State of California, residing in Sherman Oaks neighborhood of Los Angeles, California. Smith-Brown regularly purchased cosmetics at Ulta, including eye liner and mascara. During the past six months, Smith-Brown purchased dozens of cosmetic items at an Ulta store in Sherman Oaks, California, most recently lip balm on December 22, 2017. Further, in October 2017, Smith-Brown purchased lip liner, liquid eyeliner, and two types of lip gloss. Smith-Brown purchased the products believing that all of the items on the shelf were unused.

11.      Defendant Ulta Beauty, Inc. is a Delaware corporation headquartered in Bolingbrook, Illinois. Accordingly, Defendant is a citizen of Illinois and Delaware. Defendant describes itself as the largest beauty retailer in the United States and the premier beauty destination for cosmetics, fragrance, skin care products, hair care products, and salon services.

## **FACTUAL ALLEGATIONS**

12.     Ulta was founded in 1990 and, as of October 28, 2017, operates 1,058 retail stores across 48 states and the District of Columbia, in addition to distributing products through its website.  Ulta offers "All Things Beauty, All in One Place," selling more than 20,000 products from approximately 500 well-established and emerging beauty brands across all categories and price points, including its own private label.  Customers are encouraged to sign up for the "Ultamate Rewards" program, earning points that are connected to each customer's unique member number, which they can then redeem on any of Ulta's more than 20,000 products.  Ulta also offers a full-service salon – featuring hair, skin, and brow services – in every store.

13.     Ulta has been described as one of the cosmetics stores with the "best return policy."  Customers may return products to Ulta stores if they are not 100% satisfied for any reason.

14.     On January 9, 2018, a former Ulta employee revealed a dark secret about the beauty giant.  According to this employee, who posted her allegations to Twitter using the handle @fatinamxo, used products returned to Ulta are made to "look new" – but not sanitized – and put back on the shelf to sell to unsuspecting customers.  Providing just a handful of examples, @fatinamxo posted the pictures below of used foundation sticks and liquid lipsticks, which Ulta repackaged to be sold as if they were new.



15.     This former employee has claimed that Ulta staff members were trained to "restore" products, and that managers kept a close eye on whether "items in the damage bin [] looked resell able [sic]."  According to @fatinamxo, Ulta managers "even taught [employees] how to clean eyeshadow [sic] palettes and let it dry over night [sic] so it can be repackaged and sold the next day."

16.     @fatinamxo also claims that she contacted Ulta corporate, and was surprised when she was told only that the company "definitely want[s] to be hygienic" when it comes to mascara.  After clarifying that Ulta is "reselling everything that they can clean up and make 'new' again," @fatinamxo was told that someone from corporate would look into the situation.

17.     @fatinamxo says she shared her experience because she thought "makeup lovers should know what's going on behind closed doors."

18.    Creating a social media frenzy, @fatinamxo's allegations prompted responses from other Ulta employees from different locations, many of whom divulged similar practices taking place at the stores where they worked.[1]



---

[1] All pictures reproduced herein are screenshots, which have been copied exactly as they appear online. Any words or images that have been crossed out or otherwise altered were in the original.

6

19.    Many employees disclosed that, even when they tried to push back against these "disgusting" policies, managers would insist that "resellable" products be put back on the shelves:



> Hello I read your thread on ulta and I used to work there. My manger would actually write us up if we put "re sellable" items in the damage bin. I would get into arguments with my managers about lip sticks and eye-shadow and how they're clearly used. It's bad
>
> 10:50 AM

20.    While @fatinamxo thought these practices were only occurring at her store, within one day of posting her story on Twitter, she had received messages from current and former Ulta employees from stores throughout the country – including California, Washington, Texas, Florida, Michigan, South Carolina, Wisconsin, and Ohio – all of whom confirmed that similar practices occurred in those locations.  The list continues to grow.



> Can 100% confirm this is true. Shopping at any ULTA in Frisco, Mckinney, Denton, Sherman, Allen, basically the entire Dallas area and around they train every single employee to do this. All the stores in this area do this.
>
> I work at the one in Seattle and whenever they do that I say "that's disgusting you already know I'm done shopping here"
>
> 1:38 AM



21.     One Twitter user responded that she had worked at three different Ulta locations, ***all*** of which resold used products:



22.     Other employees have contacted media outlets with similar stories.  For example, a former manager from an Ulta location in Ohio reached out to *Business Insider*, claiming that "there was often pressure to sell used products."  According to this manager, who wished to remain anonymous:

> Our bosses constantly told us if it looked like it could be sold, put it back out.  The company always had a percentage they wanted you to stay below weekly in what we

damaged.  We would literally get lectured by our boss on our conference calls if our stores were over.

23.     This manager admitted that cleaning used cosmetics had been discussed and he told *Business Insider* that "returned mascara and foundation were almost always placed back on the shelf since it was difficult to tell if they were used, and his staff would clean bottled products to make them look like new again."  When items like shampoo or lotion were returned, Ulta employees "would wipe out the spout and turn the pump cap back down."

24.     Another former Ulta employee, who worked at a store in Rock Hill, South Carolina, told *Business Insider* that "[i]f there was 80% or more left in the bottle" of used hair-care and skin-care products, Ulta employees would put the bottle back on the shelf.

25.     At least one Ulta employee claimed that these practices led her to shop at one of Ulta's primary competitors, even when she worked for the company:



holy shit my store did the same!! i've always shopped at sephora, even when i was an ulta employee. ~~[redacted] i've~~ ~~[redacted]ack but don't want~~ ~~[redacted]~~ i left the corporation bc overall they don't care about anything but money & reducing their shrink

1:51 AM

26.     Another Ulta employee stated that she will "only buy product straight from the shipment truck" because the Ulta location where she works also sells used products:



Replying to @fatinamxo

Our store does the same things and I only buy product straight from the shipment truck. It's truly disgusting and disturbing

27.     Even employees who claim that their Ulta stores "avoided selling used products" stated that "unused products in good condition were fair game."  However, it is unclear how employees determined that returned products were unused.  Although it may be obvious when certain products have been used, with products like mascara and foundation, where it is difficult to tell if they have been used, it appears that the test may just be whether the product "looked 'sellable.'"  According to one former Ulta employee, employees would always "play[] the guessing game" to determine whether a product was "overly used."

Hi girl, I've worked at ULTA and Sephora and my ULTA was always playing the guessing game, if it didn't seem to be used or THAT used they would put it back. If it was overly used they would swap it out for the current tester and take the old empty tester as the damage to send back to the company. Once an employee didn't check good enough and they put out a cleanser that was just soap and water as a tester 😂 at Sephora if the box is even slightly tampered with it gets sent back, they don't chance it at Sephora and will only resell if it's 100% sealed. This is just from my experience anyway.

6:36 AM

10

28.     Multiple employees claim that the practices described by @fatinamxo and others were created by complaints from management that the stores were "damaging too much product."  As alluded to below, given Ulta's extremely liberal return policy, damaging returned products rather than putting them back on the shelves would have cost Ulta a lot of money.



29.     Even if a particular employee attempted to "damage" a product when it was returned, some managers would still put the used products back on the shelves:

Same at the ULTA I work at.. Honestly this is one of many reasons why I am over this job.. it's disgusting.. I literally had to check myself because I found myself "seeing" if it could be sold knowing it was used. I damage out anything that has been used even if one time. Unfortunately even when we damage it out at the cash wrap it still has to go through management who actually does the damaging and they will literally put it back on the shelf. I hate it! It's inconsiderate/selfish...

30.     As these allegations have spread, increasing numbers of outraged Ulta customers have been demanding answers and threatening to take their business elsewhere:

11



31.     Some customers have even claimed that Ulta employees admitted that returned items would be resold.



32.     Moreover, according to both Twitter posts made in response to @fatinamxo's allegations and posts in response to a Reddit user asking Ulta employees "what happens to the returns that people bring back," it appears that this practice has been going on for quite some time – and that Ulta has been aware of the issue for at least *three years*:



Hey Ulta! When are you going to address the issue of your stores reselling used products??? There's far too many accounts of it happening for it to be untrue.

👍 Like    💬 Comment    ↪ Share

👍 11

**Ulta Beauty**
Hey Debra, this is not our company policy and we are looking into these disturbing claims.
3y   Like   Reply    💬 2

**Debra Babineaux**
Thank you for your reply! I'm SO glad its not.
3y   Like   Reply

this from 3 years ago !!!!!! it's been going on for A LONG TIME gf

1:56 PM

---

**kayevalentine**   10 points   1 year ago

They must put it back on the shelves some of the time, I purchased a swamp queen palette the other day (there was one on the shelf and I already have one but I really did love it, so I grabbed this one as backup because I know I'll probably never see it again). Got home and opened it to find it had CLEARLY been not only opened, but definitely at least swatched. Look card was stuffed in and looked like it had been folded up, the plastic cover and brush were dirty, and all shadows and powders were definitely at least swatched. I was kinda pissed, but I didn't want to risk having to give it back so I just sanitized it and moved on.

permalink   embed   save

    **Tghyro**   31 points   1 year ago

    That could just have been someone playing around. Some people will will open a product and swatch it and stuff even though there are testers

    permalink   embed   save   parent

        **kayevalentine**   3 points   1 year ago

        Could have been, but it seems like it was returned since the enclosed card was folded up, then unfolded and put back in.

        permalink   embed   save   parent

33.     Ulta's widespread and surreptitious practice of repackaging, restocking, and commingling used returned cosmetics with new cosmetics on its shelves means that every sale of cosmetics since Ulta began this policy is tainted with the possibility that the customer is purchasing used, dirty cosmetics.  For example, if a medical company found its employees were repackaging and commingling used hypodermic needles with batches of new, sterile needles offered for sale, then none of those needles would be safe to use and the only solution that could protect customers would be to dispose of every possibly adulterated lot.

34.     As a result of Ulta's practice of reselling used and returned cosmetics, every customer who has purchased cosmetics at Ulta since this practice began was put at risk of unwittingly purchasing used, unsanitary cosmetics and this risk reduces the desirability and value of *all* cosmetics sold by Ulta regardless if the cosmetics were new or used.  Had Plaintiff and the Class members known of this practice, Plaintiff and Class members would not have purchased cosmetics from Ulta or would have paid less for them.

## CLASS ALLEGATIONS

35.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of a Class defined as follows (sometimes referred to as the "Nationwide Class"):

> All persons in the United States and its territories who purchased, other than for resale, cosmetics from Ulta Beauty retail locations.

Excluded from the Class are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Class members that timely and validly request exclusion from the Class; and (iii) the Judge presiding over this action.  The claims also do not include personal injury claims.

36.     Alternatively, Plaintiff brings this case as a class action pursuant to Fed. R. Civ.

14

P. 23(b)(2) and (b)(3) on behalf of the following subclass:

> All persons who purchased, other than for resale, in the State of California, cosmetics from Ulta Beauty retail locations.

> Excluded from the subclass are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all subclass members that timely and validly request exclusion from the subclass; and (iii) the Judge presiding over this action. The claims do not include personal injury claims. The subclass is sometimes referred to as the California Subclass. The Nationwide Class and California Subclass are sometimes collectively referred to as the "Class".

37.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38.    The members of the Class are so numerous that joinder of the Class members would be impracticable.

39.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

A.    Whether Defendant engaged in the conduct alleged;

B.    Whether Defendant misrepresented used cosmetics as new cosmetics;

C.    Whether Plaintiff and the Class members paid for a product that they did not receive;

D.    Whether Plaintiff and the Class members have been damaged and, if so, the measure of such damages;

E.    Whether Defendant unjustly retained a benefit conferred by Plaintiff and the Class members; and

F.     Whether Plaintiff and the Class members are entitled to equitable relief, including, but not limited to, a constructive trust, restitution, and injunctive relief.

40.     Plaintiff's claims are typical of the claims of the Class members because, among other things, Plaintiff and the Class members were injured through the substantially uniform misconduct described above.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class members.

41.     Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously.  The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

42.     A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.  Defendant has directed and continues to direct its conduct to all consumers in a uniform manner.  Therefore, injunctive relief on a class-wide basis is necessary to remedy continuing harms to Plaintiff and the Class members caused by Defendant's continuing misconduct.

43.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other detriment suffered by Plaintiff and the Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct.  Even if Class members

16

could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

44.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45.     Defendant has been unjustly enriched to Plaintiff's and the Class members' detriment as a result of its unlawful and wrongful retention of money conferred by Plaintiff and the Class members who were unaware of the risk that the cosmetics they purchased from Defendant may have been used, such that Defendant's retention of their money would be inequitable.

46.     Defendant's unlawful and wrongful acts, including reselling used cosmetics as if they were new, as alleged above, enabled Defendant to unlawfully receive monies it would not have otherwise obtained.

47.     Plaintiff and the Class members have conferred benefits on Defendant, which Defendant has knowingly accepted and retained.

48.     Defendant's retention of the benefits conferred by Plaintiff and the Class members would be against fundamental principles of justice, equity, and good conscience.

17

49.     Plaintiff and the Class members seek to disgorge Defendant's unlawfully retained profits and other benefits resulting from its unlawful conduct, and seek restitution and rescission for the benefit of Plaintiff and the Class members.

50.     Plaintiff and the Class members are entitled to the imposition of a constructive trust upon Defendant, such that its unjustly retained profits and other benefits are distributed equitably by the Court to and for the benefit of Plaintiff and the Class members.

## SECOND CLAIM FOR RELIEF
### Violation of California Unfair Competition Law ("UCL"),
### California Business & Professions Code § 17200, *et seq.*
### (On Behalf of the California Subclass)

51.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

52.     The Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*, prohibits any unlawful, fraudulent, or unfair business act or practice and any false or misleading advertising.

53.     In the course of conducting business, Defendant committed unlawful business practices by, among other things, making representations (which also constitute advertising within the meaning of § 17200) and omitted material facts regarding the products it sells, as set forth more fully herein, that the products on its store shelves were unused when in fact previously used products were routinely reshelved without any disclosure. Defendant's conduct constitutes the adulteration of products, as prohibited by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 361, because it introduced into interstate commerce adulterated products. This conduct constitutes violations of the unlawful prong of Section 17200.

54.     In the course of conducting business, Defendant committed unfair business practices by, among other things, making misrepresentations (which also constitute advertising

18

within the meaning of § 17200) and omitting material facts regarding its products, as detailed above. There is no societal benefit from false advertising, only harm. Plaintiff and the other Class members paid for lower value products that were not what they purported to be. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and omissions. As a result, Defendant's conduct is unfair, as it offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55. Defendant's conduct violated consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct violates the unlawful prong of Section 17200.

56. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

57. Plaintiff relied on Defendant's material misrepresentations and omissions, which are described above. Plaintiff has suffered injury in fact and lost money as a result of Defendant's unlawful, unfair, and fraudulent practices.

58. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct in violation of Section 17200, entitling Plaintiff and the other Class members to injunctive relief. If Defendant continues to engage in the violations of Section 17200 described above, Plaintiff will likely be deceived in the future when she shops for Defendant's products, not knowing the true facts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A.      Certifying the Class under Federal Rule of Civil Procedure 23, as requested herein;

B.      Appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

C.      Awarding Plaintiff and the Class members damages and/or equitable relief as appropriate;

D.      Awarding Plaintiff and the Class members declaratory and injunctive relief;

E.      Awarding Plaintiff and the Class members restitution and disgorgement;

F.      Imposing a constructive trust for the benefit of Plaintiff and the Class members on the unjustly retained benefits conferred by Plaintiff and the Class members upon Defendant;

G.      Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses; and

H.      Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a jury

trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.


DATED: January 26, 2018                    by:   _s/ Theodore B. Bell_____
                                           **WOLF HALDENSTEIN ADLER**
                                             **FREEMAN & HERZ LLC**
                                           Theodore B. Bell
                                           Carl V. Malmstrom
                                           70 West Madison Street, Suite 1400
                                           Chicago, Illinois 60602
                                           Tel.: (312) 984-0000
                                           Fax: (312) 212-4401
                                           tbell@whafh.com
                                           malmstrom@whafh.com

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
Janine L. Pollack
Correy A. Kamin
270 Madison Avenue
New York, New York 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
pollack@whafh.com
kamin@whafh.com

**MCLAUGHLIN & STERN LLP**
Lee S. Shalov
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
Fax: (212) 448-0066
lshalov@mclaughlinstern.com

*Counsel for Plaintiff and the Proposed Classes*

whafhch55305

21