## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY LAURA SMITH-BROWN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No.: 1:18-cv-610 |
| Plaintiff, | ) ) | Judge: Jorge L. Alonso |
| v. | ) ) ) | Mag. Judge: M. David Weisman |
| ULTA BEAUTY, INC. and ULTA SALON, COSMETICS & FRAGRANCE, INC. | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Kimberley Laura Smith-Brown ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to facts pertaining to herself and on information and belief as to all other matters, by and through her undersigned counsel, brings this class action complaint against defendants Ulta Beauty, Inc. and Ulta Salon, Cosmetics & Fragrance, Inc. (collectively, "Defendant" or "Ulta").

## NATURE OF THE ACTION

1.      This consumer class action arises out of Defendant's practice of misrepresenting used cosmetics returned to its retail locations as new, and reselling these used products to unsuspecting consumers.

2.      Earlier this month, a former Ulta employee disclosed that "whenever a customer would return a product, [Ulta employees] were told by managers to repackage / reseal the item and put it back on the shelf." According to this former employee, Ulta would restock and resell used cosmetics, among many other products.

1

3.      After this whistleblower publicized her allegations on Twitter, dozens of other current and former Ulta employees from retail locations all over the country confirmed that substantially similar practices also occurred at the Ulta stores where they worked.  Indeed, many Ulta employees commented that they would not shop at Ulta as a result of these unsanitary practices.

4.      Despite the widespread internal knowledge of these deceptive, unfair and unsanitary practices, Ulta has continued to deceive consumers for years, repackaging, restocking and reselling ***used beauty products including cosmetics*** at full price ***as if they were new***.

5.      As a result of Defendant's deceptive and unfair practices, Plaintiff and the other Class members did not receive that which was promised.  Had they known of Defendant's policy and practice of repackaging, restocking and reselling used cosmetics, Plaintiff and the other members of the Class would have paid less for the cosmetics they purchased or would not have purchased them at all.

6.      While this case does not involve personal injury damages, Ulta's practice of restocking and selling used cosmetics as new to unsuspecting consumers put the health of Plaintiff and other members of the Class at risk.

7.      Accordingly, Plaintiff brings this action on behalf of herself and all other similarly situated consumers to recover the amounts Plaintiff and the other Class members overpaid, to prevent Defendant from continuing to engage in its unlawful, deceptive, unfair, and unsanitary conduct, and to correct the false perception it has created in the marketplace through its misrepresentations and omissions of material facts.

## JURISDICTION AND VENUE

8.     The Court has original subject matter jurisdiction over the case under 28 U.S.C.

§ 1332(d) because the case is brought as a class action under Fed. R. Civ. P. 23, at least one

proposed Class member is of diverse citizenship from Defendant, the proposed Class includes

more than 100 members, and the aggregate amount in controversy exceeds five million dollars,

excluding interest and costs.

9.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant

engaged in substantial conduct relevant to Plaintiff's claims within this District, has its principal

place of business in this District, and has caused harm to Class members residing within this

District.

## PARTIES

10.     Plaintiff Kimberley Laura Smith-Brown ("Smith-Brown") is a citizen of the State

of California, residing in Sherman Oaks neighborhood of Los Angeles, California.  Smith-Brown

regularly purchased cosmetics at Ulta, including eye liner and mascara.  During the past six

months, Smith-Brown purchased dozens of cosmetic items at an Ulta store in Sherman Oaks,

California, most recently lip balm on December 22, 2017.  Further, in October 2017, Smith-

Brown purchased lip liner, liquid eyeliner, and two types of lip gloss.  Smith-Brown purchased

the products believing that all of the items on the shelf were unused.

11.     Defendant Ulta Salon, Cosmetics & Fragrance, Inc. is a Delaware corporation

headquarted in Bolingbrook, Illinois.   Accordingly, Defendant is a citizen of Illinois and

Delaware.  Ulta Salon, Cosmetics & Fragrance, Inc. is a wholly-owned subsidiary of Defendant

Ulta Beauty, Inc.  Defendant Ulta Salon, Cosmetics & Fragrance, Inc. was incorporated on

January 9, 1990 and became a wholly-owned subsidiary of Defendant Ulta, Beauty, Inc. on or about January, 29, 2017.

12.     Defendant Ulta Beauty, Inc. is a Delaware corporation headquartered in Bolingbrook, Illinois. Accordingly, Defendant is a citizen of Illinois and Delaware. Defendant describes itself as the largest beauty retailer in the United States and the premier beauty destination for cosmetics, fragrance, skin care products, hair care products, and salon services.

13.     On January 29, 2017, Ulta Beauty, Inc. implemented a reorganization plan such that "[i[mmediately after consummation of the Reorganization, Ulta Beauty[, Inc.] has, on a consolidated basis, the same assets, businesses, and operations as [Ulta] Salon[, Cosmetics & Fragrance, Inc.] had immediately prior to the consummation of the Reorganization."[1] According to the most recent Form 10-K filed by Ulta Beauty, Inc. on March 28, 2017, Ulta Beauty, Inc. as of January 29, 2017 "became the successor to Ulta Salon, Cosmetics & Fragrance, Inc., the former publicly-traded company and now a wholly owned subsidiary of Ulta Beauty, Inc."[2] In the 10-K, Ulta Beauty, Inc. reported its financial results on a consolidated basis for all four of its subsidiaries, one of which is Ulta Salon, Cosmetics & Fragrance, Inc.

## FACTUAL ALLEGATIONS

14.     Ulta was founded in 1990 and, as of October 28, 2017, operates 1,058 retail stores across 48 states and the District of Columbia, in addition to distributing products through its website. Ulta offers "All Things Beauty, All in One Place," selling more than 20,000 products from approximately 500 well-established and emerging beauty brands across all categories and price points, including its own private label. Customers are encouraged to sign up for the "Ultamate Rewards" program, earning points that are connected to each customer's unique

---

[1] *See* Ulta Beauty, Inc. (Jan. 30, 2017), Form 8-K12B,, p. 2.
[2] *See* Ulta Beauty, Inc. (Mar. 28, 2017) Form 10-K, p. 2.

member number, which they can then redeem on any of Ulta's more than 20,000 products. Ulta also offers a full-service salon – featuring hair, skin, and brow services – in every store.

15. Ulta has been described as one of the cosmetics stores with the "best return policy." Customers may return products to Ulta stores if they are not 100% satisfied for any reason.

16. On January 9, 2018, a former Ulta employee revealed a dark secret about the beauty giant. According to this employee, who posted her allegations to Twitter using the handle @fatinamxo, used products returned to Ulta are made to "look new" – but not sanitized – and put back on the shelf to sell to unsuspecting customers. Providing just a handful of examples, @fatinamxo posted the pictures below of used foundation sticks and liquid lipsticks, which Ulta repackaged to be sold as if they were new.



17. This former employee has claimed that Ulta staff members were trained to "restore" products, and that managers kept a close eye on whether "items in the damage bin []looked resell able [sic]." According to @fatinamxo, Ulta managers "even taught [employees]

how to clean eyeshadow [sic] palettes and let it dry over night [sic] so it can be repackaged and sold the next day."

18.     @fatinamxo also claims that she contacted Ulta corporate, and was surprised when she was told only that the company "definitely want[s] to be hygienic" when it comes to mascara.  After clarifying that Ulta is "reselling everything that they can clean up and make 'new' again," @fatinamxo was told that someone from corporate would look into the situation.

19.     @fatinamxo says she shared her experience because she thought "makeup lovers should know what's going on behind closed doors."

20.     Creating a social media frenzy, @fatinamxo's allegations prompted responses from other Ulta employees from different locations, many of whom divulged similar practices taking place at the stores where they worked.[3]



[3] All pictures reproduced herein are screenshots, which have been copied exactly as they appear online. Any words or images that have been crossed out or otherwise altered were in the original.

6



I work at Ulta and we do the same thing! It's so wrong

11:01 AM



I work at ulta too and i think it's disgusting the things that they try to resell!

11:17 AM

21.     Many employees disclosed that, even when they tried to push back against these "disgusting" policies, managers would insist that "resellable" products be put back on the shelves:



Hello I read your thread on ulta and I used to work there. My manger would actually write us up if we put "re sellable" items in the damage bin. I would get into arguments with my managers about lip sticks and eye-shadow and how they're clearly used. It's bad

10:50 AM

22.     While @fatinamxo thought these practices were only occurring at her store, within one day of posting her story on Twitter, she had received messages from current and former Ulta employees from stores throughout the country – including California, Washington, Texas, Florida, Michigan, South Carolina, Wisconsin, and Ohio – all of whom confirmed that similar practices occurred in those locations.  The list continues to grow.



23.    One Twitter user responded that she had worked at three different Ulta locations,

*all* of which resold used products:



Yep we did the same thing at my Ulta I worked at. I've actually worked at 3 different ULTA's and they all did this with returns...😢

24.     Other employees have contacted media outlets with similar stories.  For example, a former manager from an Ulta location in Ohio reached out to *Business Insider*, claiming that "there was often pressure to sell used products."  According to this manager, who wished to remain anonymous:

> Our bosses constantly told us if it looked like it could be sold, put it back out.  The company always had a percentage they wanted you to stay below weekly in what we damaged.  We would literally get lectured by our boss on our conference calls if our stores were over.

25.     This manager admitted that cleaning used cosmetics had been discussed and he told *Business Insider* that "returned mascara and foundation were almost always placed back on the shelf since it was difficult to tell if they were used, and his staff would clean bottled products to make them look like new again."  When items like shampoo or lotion were returned, Ulta employees "would wipe out the spout and turn the pump cap back down."

26.     Another former Ulta employee, who worked at a store in Rock Hill, South Carolina, told *Business Insider* that "[i]f there was 80% or more left in the bottle" of used hair-care and skin-care products, Ulta employees would put the bottle back on the shelf.

27.     At least one Ulta employee claimed that these practices led her to shop at one of Ulta's primary competitors, even when she worked for the company:



holy shit my store did the same!! i've always shopped at sephora, even when i was an ulta employee. ~~...~~ ~~...~~ i left the corporation bc overall they don't care about anything but money & reducing their shrink

1:51 AM

28.     Another Ulta employee stated that she will "only buy product straight from the shipment truck" because the Ulta location where she works also sells used products:



Replying to @fatinamxo

Our store does the same things and I only buy product straight from the shipment truck. It's truly disgusting and disturbing

29.     Even employees who claim that their Ulta stores "avoided selling used products" stated that "unused products in good condition were fair game."  However, it is unclear how employees determined that returned products were unused.  Although it may be obvious when certain products have been used, with products like mascara and foundation, where it is difficult to tell if they have been used, it appears that the test may just be whether the product "looked 'sellable.'"  According to one former Ulta employee, employees would always "play[] the guessing game" to determine whether a product was "overly used."

10

> Hi girl, I've worked at ULTA and Sephora and my ULTA was always playing the guessing game, if it didn't seem to be used or THAT used they would put it back. If it was overly used they would swap it out for the current tester and take the old empty tester as the damage to send back to the company. Once an employee didn't check good enough and they put out a cleanser that was just soap and water as a tester 😂 at Sephora if the box is even slightly tampered with it gets sent back, they don't chance it at Sephora and will only resell if it's 100% sealed. This is just from my experience anyway.
>
> 6:36 AM

30.     Multiple employees claim that the practices described by @fatinamxo and others were created by complaints from management that the stores were "damaging too much product."  As alluded to below, given Ulta's extremely liberal return policy, damaging returned products rather than putting them back on the shelves would have cost Ulta a lot of money.



31.     Even if a particular employee attempted to "damage" a product when it was returned, some managers would still put the used products back on the shelves:

> Same at the ULTA I work at..
> Honestly this is one of many
> reasons why I am over this
> job.. it's disgusting.. I literally
> had to check myself because
> I found myself "seeing" if it
> could be sold knowing it was
> used. I damage out anything
> that has been used even if
> one time. Unfortunately even
> when we damage it out at the
> cash wrap it still has to go
> through management who
> actually does the damaging
> and they will literally put it
> back on the shelf. I hate it! It's
> inconsiderate/selfish...

32.     As these allegations have spread, increasing numbers of outraged Ulta customers
have been demanding answers and threatening to take their business elsewhere:



**40 the Scammer**
@littleforty

@ultabeauty explain your nasty, fraudulent selves before I bring
all my business to @Sephora twitter.com/fatinamxo/stat...
10:47 PM - Jan 10, 2018
1    1

**dead girl walking**
@dallonweaks

@ultabeauty fix your return system so that no one can return
makeup/beauty projects used or not, because it's a HEALTH
RISK. nasty ass.
10:52 PM - Jan 10, 2018
1

**LP**
@pasqlee

@ultabeauty are you going to address the rumors about your
return policy or nah? Cause if you're not, I'm boycotting you
10:53 PM - Jan 10, 2018
1    1    1

33.     Some customers have even claimed that Ulta employees admitted that returned
items would be resold.



34.     Moreover, according to both Twitter posts made in response to @fatinamxo's allegations and posts in response to a Reddit user asking Ulta employees "what happens to the returns that people bring back," it appears that this practice has been going on for quite some time – and that Ulta has been aware of the issue for at least ***three years***:





35.    Ulta's widespread and surreptitious practice of repackaging, restocking, and commingling used returned cosmetics with new cosmetics on its shelves means that every sale of cosmetics since Ulta began this policy is tainted with the possibility that the customer is purchasing used, dirty cosmetics.  For example, if a medical company found its employees were repackaging and commingling used hypodermic needles with batches of new, sterile needles offered for sale, then none of those needles would be safe to use and the only solution that could protect customers would be to dispose of every possibly adulterated lot.

36.    As a result of Ulta's practice of reselling used and returned cosmetics, every customer who has purchased cosmetics at Ulta since this practice began was put at risk of unwittingly purchasing used, unsanitary cosmetics and this risk reduces the desirability and value of *all* cosmetics sold by Ulta regardless if the cosmetics were new or used.  Had Plaintiff and the Class members known of this practice, Plaintiff and Class members would not have purchased cosmetics from Ulta or would have paid less for them.

## CLASS ALLEGATIONS

37.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and

(b)(3), on behalf of a Class defined as follows (sometimes referred to as the "Nationwide

Class"):

> All persons in the United States and its territories who purchased, other than for
> resale, cosmetics from Ulta Beauty retail locations.

Excluded from the Class are: (i) Defendant and its officers and directors, agents,

affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Class members that timely

and validly request exclusion from the Class; and (iii) the Judge presiding over this action.  The

claims also do not include personal injury claims.

38.     Alternatively, Plaintiff brings this case as a class action pursuant to Fed. R. Civ.

P. 23(b)(2) and (b)(3) on behalf of the following subclass:

> All persons who purchased, other than for resale, in the State of California,
> cosmetics from Ulta Beauty retail locations.

Excluded from the subclass are: (i) Defendant and its officers and directors, agents,

affiliates, subsidiaries, and authorized distributors and dealers; (ii) all subclass members that

timely and validly request exclusion from the subclass; and (iii) the Judge presiding over this

action.  The claims do not include personal injury claims.  The subclass is sometimes referred to

as the California Subclass.   The Nationwide Class and California Subclass are sometimes

collectively referred to as the "Class".

39.     Certification of Plaintiff's claims for class-wide treatment is appropriate because

Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claims.

40.     The members of the Class are so numerous that joinder of the Class members

would be impracticable.

41.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

A.     Whether Defendant engaged in the conduct alleged;

B.     Whether Defendant misrepresented used cosmetics as new cosmetics;

C.     Whether Plaintiff and the Class members paid for a product that they did not receive;

D.     Whether Plaintiff and the Class members have been damaged and, if so, the measure of such damages;

E.     Whether Defendant unjustly retained a benefit conferred by Plaintiff and the Class members; and

F.     Whether Plaintiff and the Class members are entitled to equitable relief, including, but not limited to, a constructive trust, restitution, and injunctive relief.

42.     Plaintiff's claims are typical of the claims of the Class members because, among other things, Plaintiff and the Class members were injured through the substantially uniform misconduct described above.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class members.

43.     Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously.  The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

44.     A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive

relief or corresponding declaratory relief is appropriate as to the Class as a whole. Defendant has directed and continues to direct its conduct to all consumers in a uniform manner. Therefore, injunctive relief on a class-wide basis is necessary to remedy continuing harms to Plaintiff and the Class members caused by Defendant's continuing misconduct.

45.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class or, Alternatively, the California Subclass)**

46.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47.     Plaintiff brings this claim individually and on behalf of the members of the Class or, alternatively, the California Subclass against Defendant.

48.     Defendant as the seller impliedly warranted that its beauty products were fit for

17

their intended purpose in that they were new, previously unused by consumers, and were free from adulteration prior to purchase.

49.     Defendant breached the warranty implied in the contract for the sale of the it beauty products in that the products could not pass without objection in the trade under the contract description, and that the goods were not of fair, average quality within the description, As a result, Plaintiff and Class members or the California Subclass members did not receive the goods as impliedly warranted by Defendant to be merchantable.

50.     Further, Defendant took affirmative steps to intentionally conceal its actions so that there was no way in which to tell which beauty products sold were adulterated due to previous use and which ones were not.

51.     Plaintiff and Class or California Subclass members are the intended beneficiaries of Defendant's implied warranties.

52.     In reliance upon Defendant's skill and judgment and the implied warranties, Plaintiff, Class, and California Subclass members purchased beauty products from Ulta for personal use.

53.     Defendant knew its beauty products would be purchased and used without consumer knowledge that an indeterminate number of their beauty products had been previously used and were thus adulterated.

54.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff, Class, and California Subclass members have been injured and harmed because: (a) they would not have purchased the beauty products on the same terms if the truth concerning Defendant's actions had been known; and (b) they paid a price premium due to the Defendant's actions as described herein above.

55.     Pursuant to the California Uniform Commercial Code § 2-607(3)(A), Plaintiff gave Defendant Ulta Beauty, Inc. written notice of Defendant's breach of warranty on January 26, 2018.  *See* Exhibit A, Letter from Janine Pollack to Ulta Beauty, Inc.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the Nationwide Class, or Alternatively, the California Subclass)

56.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of the members of the Class or, alternatively, the California Subclass against Defendant.

58.     Defendant has been unjustly enriched to Plaintiff's and the Class or the California Subclass members' detriment as a result of its unlawful and wrongful retention of money conferred by Plaintiff and the Class or the California Subclass members who were unaware of the risk that the cosmetics they purchased from Defendant may have been used, such that Defendant's retention of their money would be inequitable.

59.     Defendant's unlawful and wrongful acts, including reselling used cosmetics as if they were new, as alleged above, enabled Defendant to unlawfully receive monies it would not have otherwise obtained.

60.     Plaintiff and the Class or the California Subclass members have conferred benefits on Defendant, which Defendant has knowingly accepted and retained.

61.     Defendant's retention of the benefits conferred by Plaintiff and the Class or the California Subclass members would be against fundamental principles of justice, equity, and good conscience.

62.     Plaintiff and the Class or the California Subclass members seek to disgorge Defendant's unlawfully retained profits and other benefits resulting from its unlawful conduct, and seek restitution and rescission for the benefit of Plaintiff and the Class or the California Subclass members.

63.     Plaintiff and the Class or the California Subclass members are entitled to the imposition of a constructive trust upon Defendant, such that its unjustly retained profits and other benefits are distributed equitably by the Court to and for the benefit of Plaintiff and the Class or the California Subclass members.

**THIRD CLAIM FOR RELIEF**
**Violation of California Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200,** *et seq.*
**(On Behalf of the California Subclass)**

64.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

65.     The Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*, prohibits any unlawful, fraudulent, or unfair business act or practice and any false or misleading advertising.

66.     In the course of conducting business, Defendant committed unlawful business practices by, among other things, making representations (which also constitute advertising within the meaning of § 17200) and omitted material facts regarding the products it sells, as set forth more fully herein, that the products on its store shelves were unused when in fact previously used products were routinely reshelved without any disclosure. Defendant's conduct constitutes the adulteration of products, as prohibited by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 361, because it introduced into interstate commerce adulterated products. This conduct constitutes violations of the unlawful prong of Section 17200.

20

67.     In the course of conducting business, Defendant committed unfair business practices by, among other things, making misrepresentations (which also constitute advertising within the meaning of § 17200) and omitting material facts regarding its products, as detailed above.  There is no societal benefit from false advertising, only harm.  Plaintiff and the other Class members paid for lower value products that were not what they purported to be.  While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and omissions. As a result, Defendant's conduct is unfair, as it offended an established public policy.  Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

68.     Defendant's conduct violated consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers.  Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.   This conduct violates the unlawful prong of Section 17200.

69.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

70.     Plaintiff relied on Defendant's material misrepresentations and omissions, which are described above.  Plaintiff has suffered injury in fact and lost money as a result of Defendant's unlawful, unfair, and fraudulent practices.

71.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct in violation of Section 17200, entitling Plaintiff and the other Class members to injunctive relief.   If Defendant continues to engage in the violations of Section 17200

21

described above, Plaintiff will likely be deceived in the future when she shops for Defendant's products, not knowing the true facts.

## FOURTH CLAIM FOR RELIEF
**California Consumers Legal Remedies Act
Cal. Civ. Code § 1750 *et seq.*
(On Behalf of the California Subclass)**

72.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

73.     Plaintiff and members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770, and each has engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

74.     Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a) and 1770.

75.     Ulta's acts and practices, as alleged in this Complaint, violate California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770(a)(5), (6) and (7), by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with transactions, namely, the sale of used beauty products altered to appear as new. This conduct was intended to result and did result in the sale of these goods to consumers. Specifically, Ulta:

> A.     Represented that Ulta's beauty products had approval or characteristics that they did not have;

> B.     Represented that Ulta's beauty products were original or new if they were deteriorated unreasonably, or were altered, reconditioned, reclaimed, used, or secondhand; and

C.       Represented that the Ulta's beauty products were of a particular standard, quality or grade when they were actually of another.

76.     Ulta was in a position to know and did in fact know, by its own conduct, that the used beauty products were being affirmatively altered in order to appear as new when resold.

77.      Ulta intended that Plaintiff and the California Subclass members would rely on the false and misleading representations, and any reasonable consumer would deem the false and misleading representations material to the purchase of the affected Products.

78.     As a direct and proximate result of Ulta's conduct, Plaintiff and the California Subclass members have been harmed, in that they purchased beauty products from Ulta that they otherwise would not have, or paid more for the beauty products from Ulta than they otherwise would have.  Meanwhile, Ulta has generated more revenue than it otherwise would have, unjustly enriching itself.

79.     Plaintiff and the California Subclass is entitled to equitable relief, reasonable attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Ulta from its unlawful, fraudulent, and deceitful activity.

80.     Pursuant to Cal. Civ. Code § 1782(a), Plaintiff sent Ulta Beauty, Inc. a letter on behalf of herself and a proposed nationwide class of consumers on January 26, 2018, demanding that Ulta rectify the problems listed herein.  Ulta has failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within the proscribed 30-day time period for written notice pursuant to Cal. Civ. Code § 1782. *See* Exhibit A, Letter from Janine Pollack to Ulta Beauty, Inc.

81.     Due to Ulta failing to rectify or otherwise agreeing to rectify the problems associated with the actions detailed above, Plaintiff seeks to further recover actual or statutory

compensatory/monetary damages as authorized by Cal. Civ. Code § 1780(a)(1), restitution as applicable and authorized under Cal. Civ. Code § 1780(a)(3), and punitive damages as authorized by Cal. Civ. Code § 1780(a)(4), which are appropriate in this case in light of Ulta's knowing, intentional, fraudulent, and unconscionable conduct, as well as Ulta's reckless disregard of its legal obligations to Plaintiff and the California Subclass members, and as otherwise recoverable under Cal. Civ. Code § 1780(a)(4).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A.  Certifying the Class under Federal Rule of Civil Procedure 23, as requested herein;

B.  Appointing Plaintiff as Class Representative and Plaintiff's Interim Class Counsel as Class Counsel;

C.  Awarding Plaintiff and the Class members damages and/or equitable relief as appropriate;

D.  Awarding Plaintiff and the Class members declaratory and injunctive relief;

E.  Awarding Plaintiff and the Class members restitution and disgorgement;

F.  Imposing a constructive trust for the benefit of Plaintiff and the Class members on the unjustly retained benefits conferred by Plaintiff and the Class members upon Defendant;

G.  Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses; and

H.  Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.


DATED: February 27, 2018

by:   _s/ Theodore B. Bell_

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
Theodore B. Bell
Carl V. Malmstrom
70 West Madison Street, Suite 1400
Chicago, Illinois 60602
Tel.: (312) 984-0000
Fax: (312) 212-4401
tbell@whafh.com
malmstrom@whafh.com

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
Janine L. Pollack
270 Madison Avenue
New York, New York 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
pollack@whafh.com

**MCLAUGHLIN & STERN LLP**
Lee S. Shalov
Wade Wilkinson
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
Fax: (212) 448-0066
lshalov@mclaughlinstern.com
wwilkinson@mclaughlinstern.com

_**Interim Class Counsel for Plaintiff and the Proposed Classes**_

whafhch55358