**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KIMBERLEY LAURA SMITH-BROWN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:18-cv-00610 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| ULTA BEAUTY, INC. and ULTA SALON, COSMETICS & FRAGRANCE, INC., | ) ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

COMPLAINT ALLEGATIONS ...........................................................................................2

ARGUMENT .........................................................................................................................3

I.      PLAINTIFF HAS NOT ALLEGED AN ARTICLE III INJURY .......................................3

II.     PLAINTIFF LACKS STANDING TO BRING HER PUTATIVE CLASS CLAIMS .........................................................................................................................7

III.    PLAINTIFF HAS NOT PLED WITH PARTICULARITY AND USES IMPROPER GROUP PLEADING .....................................................................................10

IV.    EACH OF PLAINTIFF'S CLAIMS SUFFER FROM SPECIFIC DEFECTS ................13

      A.  Plaintiff Has Not Alleged Any Breach Of Implied Warranty......................................13

      B.  Unjust Enrichment Is Not An Independent Cause of Action.......................................14

      C.  Plaintiff's UCL and CLRA Claims Fail.......................................................................14

CONCLUSION......................................................................................................................15

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Allstate Indem. Co. v. ADT LLC*,
   110 F. Supp. 3d 856 (N.D. Ill. 2015) ...................................................2

*Andrade v. Pangborn Corp.*,
   2004 WL 2480708 (N.D. Cal. Oct. 22, 2004) ......................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................13

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ...............................................................12

*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*,
   2017 WL 4269005 (N.D. Ill. Sept. 26, 2017) ................................12, 13

*Chavez v. Nestle USA, Inc.*,
   2011 WL 10565797 (C.D. Cal. Jan. 10, 2011) ...................................14

*Corson v. Toyota Motor Sales, U.S.A., Inc.*,
   2013 WL 1802709 (C.D. Cal. Apr. 24, 2013) .....................................12

*CYBERsitter, LLC v. Google Inc.*,
   905 F. Supp. 2d 1080 (C.D. Cal. 2012) ..............................................14

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) ...............................................................10

*Gubala v. Allmax Nutrition, Inc.*,
   2015 WL 6460086 (N.D. Ill. Oct. 26, 2015).........................................7

*Hodgers-Durgin v. De la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ...............................................................9

*Hubert v. Gen. Nutrition Corp.*,
   2017 WL 3971912 (W.D. Penn. Sept. 8, 2017).....................................6

*In re Barnes & Noble Pin Pad Litig.*,
   2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ...............................3, 5, 6

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*,
   288 F.3d 1012 (7th Cir. 2002) ...............................................................8

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*,
   2015 WL 3988488 (N.D. Ill. June 29, 2015)..........................................8

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*,
    831 F. Supp. 2d 507 (D. Mass. 2011) ................................................................6

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
    155 F. Supp. 3d 772 (N.D. Ill. 2016) ...............................................................8

*Indep. Tr. Corp. v. Stewart Info Servs. Corp.*,
    665 F.3d 930 (7th Cir. 2012) ..........................................................................13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................10

*Koronthaly v. L'Oreal USA, Inc.*,
    374 F. App'x 257 (3d Cir. 2010) ......................................................................6

*Lassen v. Nissan N. Am., Inc.*,
    211 F. Supp. 3d 1267 (C.D. Cal. 2016) ...........................................................6

*Lewert v. P.F. Chang's China Bistro, Inc.*,
    819 F.3d 963 (7th Cir. 2016) ...........................................................................5

*Mass. Casualty Ins. Co. v. Katz*,
    2012 WL 12886215 (C.D. Cal. Oct. 17, 2012) ...............................................15

*Midwest Commerce Banking Co. v. Elkhart City Ctr.*,
    4 F.3d 521 (7th Cir. 1993) ..............................................................................10

*Padilla v. Costco Wholesale Corp.*,
    No. 11 C 7686, 2012 WL 2397012 (N.D. Ill. June 21, 2012) ............................7, 8

*Porter v. NBTY, Inc.*,
    2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) ....................................................7

*Remijas v. Neiman Marcus Grp., LLC*,
    2014 WL 4627893 (N.D. Ill. Sept. 16, 2014) ..............................................4, 5, 6

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688, 694-95 (7th Cir. 2015) ..............................................................5

*Siegel v. Shell Oil Co.*,
    256 F.R.D. 580 (N.D. Ill. 2008), *aff'd* 612 F.3d 932 (7th Cir. 2010) ....................8

*Spector v. Mondelez Int'l, Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. 2016) ..............................................................11

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ....................................................................................3

*Strumlauf v. Starbucks Corp.*,
    192 F. Supp. 3d 1025 (N.D. Cal. 2016) ........................................................................9

*Ulrich v. Probalance, Inc.*,
    2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) (Alonso, J.)........................................9

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ..............................................................................13

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
    536 F.3d 663 (7th Cir. 2008) ....................................................................................10

**STATUTES AND OTHER AUTHORITIES**

California Unfair Competition Law, CAL. BUS. & PROFS. CODE § 17200............................ passim

California Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 .................................. passim

Federal Rule of Civil Procedure 9 ...............................................................................1, 10, 11

Federal Rule of Civil Procedure 12 ...................................................................................... passim

Defendants Ulta Beauty, Inc. ("Ulta Beauty") and Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta Salon"), collectively "Defendants," hereby submit the following Memorandum of Law in Support of Their Motion to Dismiss Plaintiff Kimberley Laura Smith-Brown's Amended Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

By her own allegations, Plaintiff received exactly what she intended to purchase when she shopped at Defendants' stores – <u>new</u> cosmetics. Someone who merely alleges a risk of potential injury that never materialized (like Plaintiff), or who complains about an alleged business practice that she was not subjected to and did not cause her harm (like Plaintiff), does not have standing to sue under Article III of the United States Constitution. Were that not the rule, any customer who purchased any product, and took issue with any undisclosed business practice by the seller, could file suit despite receiving exactly the product the customer bargained for, greatly expanding the scope of litigation. Because Plaintiff lacks standing, the Complaint should be dismissed.

But even if Plaintiff has individual standing, which Defendants dispute, she still lacks standing to bring the class claims contained in her putative class complaint. Plaintiff is a California resident who allegedly purchased various unspecified cosmetic products from Defendants. Defendants carry tens of thousands of different products in over 1,000 retail locations in 48 states. By seeking to represent a class of "[a]ll persons . . . who purchased . . . cosmetics from Ulta Beauty retail locations" for both damages and injunctive relief, Plaintiff reaches far beyond her own circumstances and asserts claims that are based upon products she did not purchase, arise under the laws of states in which she does not live, and seek injunctive relief to which she herself is not entitled. Because Plaintiff cannot bring those claims or seek that relief, they should be dismissed.

Finally, Plaintiff's Complaint fails to state a claim: (1) Plaintiff does not state her allegations of fraud with particularity under Rule 9(b), instead vaguely alleging a "widespread"

practice of unspecified "fraud" and "deceit"; (2) Plaintiff engages in improper group pleading by asserting all allegations against all defendants under the group term "Ulta"; (3) Plaintiff has not alleged any breach of implied warranty; (4) Plaintiff's unjust enrichment claim is not a cause of action under California law; and (5) Plaintiff has not alleged harm under California's Unfair Competition Law (" UCL") or Consumers Legal Remedies Act ("CLRA") or unfair conduct under the UCL.

## **COMPLAINT ALLEGATIONS[1]**

Ulta Beauty and its wholly-owned subsidiary, Ulta Salon, are the largest beauty retailer in the United States. (Am. Compl. ¶¶ 11–13.) They operate more than one thousand retail locations across 48 states and the District of Columbia and sell "more than 20,000 products from approximately 500 well-established and emerging beauty brands across all categories and price points," including cosmetics, fragrance, and skin and hair care products. (*Id.* ¶ 14.)

Plaintiff is a California citizen and Ulta customer who alleges that she has purchased various eye and lip cosmetics – including eyeliner, mascara, and lip products, without specifying the product name or brand for any of the items – from one of Defendants' retail locations in Sherman Oaks, California. (*Id.* ¶ 10.) She "believ[ed] that all of the items on the shelf [at the Ulta store] were unused." (*Id.*) Based entirely on anonymous statements made on social media (sites such as Twitter and Reddit) and an article in *Business Insider*, Plaintiff now alleges that Defendants have a "widespread and surreptitious" practice of reselling "used" and returned cosmetics. (*Id.* ¶¶ 16–26, 35.) Plaintiff asserts that if she had known of this alleged practice, she "would not have purchased cosmetics from Ulta or would have paid less for them." (*Id.* ¶ 36.)

---

[1] For purposes of this motion only, Defendants treat Plaintiff's well-pleaded allegations, but not her "legal conclusions, or threadbare recitals of the elements of a cause of action," as true. *Allstate Indem. Co. v. ADT LLC*, 110 F. Supp. 3d 856, 860 (N.D. Ill. 2015).

Plaintiff purports to represent herself and the following classes:

- **Nationwide Class:** "All persons in the United States and its territories who purchased, other than for resale, cosmetics from Ulta Beauty retail locations."

- **California Class:** "All persons who purchased, other than for resale, in the State of California, cosmetics from Ulta Beauty retail locations."

(*Id.* ¶¶ 37–38.) Plaintiff asserts four claims against Defendants: (1) breach of implied warranty of merchantability (Both Classes); (2) unjust enrichment (Both Classes); (3) violation of the UCL (California Class); and (4) violation of the CLRA (California Class). (*Id.* ¶¶ 46–81.)

Notably for purposes of the present motion, Plaintiff's Complaint nowhere alleges that any of the products Plaintiff purchased from Defendants were used, or that she received anything other than exactly what she believed she was buying: new cosmetics. Plaintiff has not alleged that the products she received from Defendants were defective or dangerous, or that the products purchased from Defendants caused her any physical injury. Nor does Plaintiff have any personal knowledge that returned, used products are being resold at any Ulta retail location, including the store in Sherman Oaks, California, or any other Ulta location.

## ARGUMENT

## I. PLAINTIFF HAS NOT ALLEGED AN ARTICLE III INJURY

Plaintiff has not alleged any Article III injury and lacks standing to bring her claims. An "irreducible constitutional minimum" of Article III standing is that a plaintiff has suffered an "injury in fact" – meaning, an injury that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016). "The plaintiff bears the burden of alleging facts sufficient to establish standing; there is no burden on the defendant to show standing does not exist." *In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *2 (N.D. Ill. Sept. 3, 2013). Because Plaintiff has not alleged any sufficient injury, her Complaint should be dismissed.

Plaintiff's Complaint is clear that she is not alleging that any of the products she purchased from Defendants were previously used or that her health was harmed in any way. (Am. Compl. ¶¶ 10, 36.) Nor does Plaintiff make the purchase of used products or an injury to health a condition of membership in her putative classes. (*Id.* ¶¶ 37, 38.) Instead, the cosmetics that Plaintiff actually received from Defendants were precisely the new, unused cosmetics that she was seeking to buy. Plaintiff nevertheless asserts that she – and a putative class of <u>every</u> Ulta customer for an unknown number of prior years – was purportedly "injured" because, had she known about Defendants' alleged practice of reselling used cosmetics, "Plaintiff . . . would not have purchased cosmetics from Ulta or would have paid less for them." (*Id.* ¶ 36.) That is her only alleged injury.

Simply put, a plaintiff does not plead an Article III injury by alleging that a retailer engaged in an alleged business practice that the plaintiff disfavors but that did not affect the products she purchased or cause the plaintiff any other harm. Courts in this district have at least twice rejected, on standing grounds, suits by plaintiffs with no alleged injury other than a claim that they overpaid for, or would not have purchased, a product in light of a retailer's alleged business practices. Numerous other courts have rejected similar attempts at standing based upon allegedly improper practices or alleged defects that, at bottom, caused the named plaintiff no injury.

In *Remijas v. Neiman Marcus Grp., LLC*, 2014 WL 4627893 (N.D. Ill. Sept. 16, 2014), the court considered claims by Neiman Marcus shoppers in connection with a data breach. The plaintiffs – whose data was stolen, but who had not suffered fraudulent charges – advanced several theories of standing. *Id.* at *2–5. Among them, the plaintiffs argued that had they known of Neiman Marcus's data security practices, they either would not have purchased products from Neiman Marcus or they would have paid less for those products. *Id.* at *4. The Court rejected that alleged "injury" as a basis for standing, labeling it "creative, but unpersuasive." *Id.* The Court agreed that

a defect "intrinsic" to a purchased product (such as a toy later found to be toxic) could establish standing, but complaints about "extrinsic" business operations were insufficient. *Id.* at *5.

The district court's dismissal in *Remijas* was appealed to the Seventh Circuit, which reversed on other grounds. Relevant here, the Seventh Circuit described as "dubious" and "problematic" the very theory now pressed by Plaintiff: that a plaintiff who complains about a store's operations (but is not otherwise harmed) has standing because they allegedly "overpaid" for their purchase in light of the practice, or would have "shunned" the particular retailer had they known of the practice. 794 F.3d 688, 694–95 (7th Cir. 2015). The Seventh Circuit recognized that an overpayment theory could confer standing when the actual product purchased by the plaintiff turns out to be defective or dangerous, but declined to extend that theory to a case where a plaintiff does not "allege any defect in any product they purchased." *Id.* at 695. Two years later, the Seventh Circuit came to the same conclusion in *Lewert v. P.F. Chang's China Bistro, Inc.*, again expressing "skeptic[ism]" that plaintiff's allegation that they would not have dined at P.F. Chang's had they known of the challenged practice stated an Article III injury. 819 F.3d 963, 968 (7th Cir. 2016).

Another Northern District of Illinois court considered, and again rejected, a similar set of standing arguments in *In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588. There, plaintiffs brought claims for a putative class of Barnes & Noble purchasers who purchased products during a time when some credit card terminals at Barnes & Noble locations had been compromised by "skimmers." *Id.* at *1. The plaintiffs, with the exception of one, did not allege that their credit card information was actually stolen, only that a data breach occurred that resulted in the theft of some customer data. *Id.* at *2. Plaintiffs argued that they had standing because they "overpaid" for products from Barnes & Noble because the retailer had a practice of not employing adequate security measures. *Id.* at *5. The court rejected that theory. *Id.* at *6.

5

As Judge Zagel recognized in *Remijas*, the decisions in *Remijas*, *Lewert*, and *In re Barnes & Noble Pin Pad Litigation* reflect the "vital limiting principle" that an alleged "value reducing deficiency" be "intrinsic to the product at issue" in order to create standing. 2014 WL 4627893, at *5. Abandoning this principle, as Plaintiff would have the Court do, would mean that every purchaser – despite actually receiving a good, effective, non-defective product – would have standing to sue whenever he or she complains about a company's business practices, regardless of whether the practice directly harmed him or her. A customer who, for example, complained about inadequate in-store security, could bring suit "even if no physical injury actually befell the customer," merely because "he or she [allegedly] paid a premium for adequate store security." *Id.* By contrast, rejecting this expansive theory of standing does not bar any customers who are <u>actually harmed</u> or who receive a product that was <u>actually defective</u> from bringing suit.

Finally, numerous other courts have established standing principles that – even if not squarely addressing the alleged "injury" in this case – are consistent with a finding that that Plaintiff has no cognizable injury and lacks standing to sue Defendants. For example, plaintiffs lack standing when, despite alleging that a product was misrepresented, the product was effective and caused no adverse health consequences. *See Hubert v. Gen. Nutrition Corp.*, 2017 WL 3971912, at *8 (W.D. Penn. Sept. 8, 2017). Plaintiffs also lack standing when a product allegedly contains a hazardous ingredient, but plaintiffs cannot show that it caused harm or is likely to cause harm in the future. *See Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010); *In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 511 (D. Mass. 2011). And a long line of cases "reject for lack of standing," attempts (like Plaintiff's here) to recast what are "no-injury products-liability claims" as "consumer fraud claims." *See, e.g.*, *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1281, 1289 (C.D. Cal. 2016) (collecting cases).

## II.  PLAINTIFF LACKS STANDING TO BRING HER PUTATIVE CLASS CLAIMS

Even if Plaintiff has alleged some injury sufficient for individual standing (which she has not), she still cannot assert claims for monetary and injunctive relief on behalf of "[a]ll persons . . . who purchased . . . cosmetics from Ulta Beauty retail locations." (Am. Compl. ¶ 37.) A class representative's standing to assert claims on behalf of putative class members is limited to claims that she herself possesses. Any claims Plaintiff is pursuing based on products she did not purchase, that arise under law other than California, or that seek injunctive relief should be dismissed.

*First*, Plaintiff cannot bring claims for putative class members that are based on products different from and unrelated to those that she herself purchased. At most, class-action plaintiffs have standing to pursue claims for putative class members that are based on the same products that plaintiff purchased or "substantially similar" products. *Gubala v. Allmax Nutrition, Inc.*, 2015 WL 6460086, at *3 (N.D. Ill. Oct. 26, 2015). Claims based on other products must be dismissed. *Id.* at 3; *see also Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2012 WL 2397012, at *3 (N.D. Ill. June 21, 2012) (finding no standing as to claim pertaining to nutritional supplement that differed from nutritional supplement plaintiff purchased).[2]

Here, Plaintiff brings her claims with respect to all "cosmetics" sold by Defendants and purports to represent "[a]ll persons in the United States and its territories who purchased . . . cosmetics from Ulta Beauty retail locations." (Am. Compl. ¶¶ 36–37.) Plaintiff does not allege (and cannot allege) that she purchased products substantially similar to all of the "more than 20,000 products from approximately 500 . . . beauty brands across all categories and price points" that

---

[2] Some courts have held that class-action plaintiffs may bring only claims related to the precise products they have purchased and not products that are similar. *See, e.g.*, *Porter v. NBTY, Inc.*, 2016 WL 6948379, at *3 (N.D. Ill. Nov. 28, 2016). For purposes of the current motion, the Court need not take a position on the proper standard, as Plaintiff's claims fail either test.

Defendants sell. (*Id.* ¶ 14.) In fact, Plaintiff fails to specifically identify <u>any</u> products that she purchased, instead generally alleging that she purchased certain types of eye and lip products of unspecified brands, making it impossible to determine what (if any) representative standing may be appropriate. (*Id.* ¶ 10.) Since Plaintiff failed to identify the specific products she purchased, all of her claims on behalf of putative class members should be dismissed. *See Padilla*, 2012 WL 2397012, at *3.

*Second*, Plaintiff cannot bring claims for putative class members that are based on the laws of states other than California. Plaintiff is a citizen of California and made all purchases from Defendants in California. (Am. Compl. ¶ 10.) Because her claims are governed by California law, she "only ha[s] Article III standing to raise claims under [California] law, not the laws of any . . . other states." *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *25 (N.D. Ill. June 29, 2015).

Plaintiff, however, purports to bring unjust enrichment and implied warranty of merchantability claims on behalf of a nationwide class of consumers, the majority of whom undoubtedly live outside of California and made their purchases outside of California. (Am. Compl. ¶ 37.) Those putative class members' unjust enrichment and implied warranty claims will be governed by the laws of other states, not California. *See Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008) (under Illinois choice-of-law, class members' unjust enrichment and consumer protection claims governed by the laws of the states where the purchases took place), *aff'd* 612 F.3d 932 (7th Cir. 2010); *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 786 (N.D. Ill. 2016) ("[U]nder Illinois choice-of-law rules, the place of purchase and injury governs breach of warranty claims."); *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("If recovery for breach of warranty or

8

consumer fraud is possible, the injury is decidedly where the consumer is located, rather than where the seller maintains its headquarters."). Plaintiff has no standing to bring claims on behalf of a nationwide class of buyers asserting claims under the laws of dozens of different states; those claims should be dismissed.

*Third,* Plaintiff cannot bring claims for injunctive relief when she is not entitled to an injunction herself. Plaintiff seeks injunctive relief under the California UCL and CLRA. (Am. Compl. ¶¶ 71, 79.) In order to obtain federal injunctive relief under either statute, a plaintiff must show "that there is 'a sufficient likelihood that [he or she] will again be wronged in a similar way.'" *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1030–31 (N.D. Cal. 2016). "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. De la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

Plaintiff's claims rest on allegations that Defendants allegedly restock and resell used cosmetics without customers' knowledge. Now that Plaintiff is aware of the alleged practice (which Defendants deny), she cannot plausibly allege any danger that she will be misled in the future. *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (Alonso, J.) (finding no standing for injunctive relief where plaintiff alleges to be "aware of the allegedly deceptive practice"). Moreover, here Plaintiff has specifically alleged that, had she known of Defendants' purported practice, she "would not have purchased cosmetics from Ulta or would have paid less for them." (Am. Compl. ¶ 36.) In light of Plaintiff's specific Complaint allegation, the only possible conclusion is that – now allegedly armed with knowledge – Plaintiff either will not shop at Defendants' stores (and not suffer future alleged injury) or will only buy Defendants' products at a price she agrees with (and not suffer future alleged injury). Because Plaintiff is not herself entitled to an injunction, she has no standing to represent a class seeking one.

9

## III.   PLAINTIFF HAS NOT PLED WITH PARTICULARITY AND USES IMPROPER GROUP PLEADING

Next, Plaintiff's Complaint should be dismissed because its allegations of fraud are not pled with particularity under Federal Rule of Civil Procedure 9(b) and it is also replete with improper "group pleading." Under Rule 9(b), a party is required to "state with particularity the circumstances constituting fraud." Group pleading violates the notice pleading standards of Rule 8 because, by lumping defendants together, the complaint does not give each defendant notice as to the scope of claims against it. Given these deficiencies, the Complaint should be dismissed.

*First*, there is no question that Plaintiff's allegations must meet the Rule 9(b) pleading standard. Throughout the Complaint, Plaintiff alleges that Defendants "misrepresent[ed]" its products, that the alleged practices were "deceptive," and that Defendants "deceive[d] customers for years." (Am. Compl. ¶¶ 1, 4.) These allegations clearly sound in fraud. The Complaint also includes claims under California's UCL and CLRA, which are regularly "grounded in fraud" and subject to the Rule 9(b) standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

In order to satisfy Rule 9(b), Plaintiff is required to describe the "circumstances" of the alleged fraud with "particularity," by including such information as "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). This requires describing the "who, what, when, where, and how" of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). This standard applies both to alleged omissions and alleged misstatements. *Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir. 1993) (stating that rule 9(b) requires the party "to set forth the date and content of the statements or omissions that it claimed

to be fraudulent"). Plaintiff must allege with particularity the fraud that <u>she</u> was subject to, and cannot rely on class allegations.

The Complaint falls far short of this standard. Plaintiff alleges that she purchased products at Defendants' store in Sherman Oaks, California. (Am. Compl. ¶ 10.) But beyond alleging generally that Defendants would "restock and resell used cosmetics, among many other products," (*Id.* ¶ 2), and that this practice was supposedly "widespread," (*Id.* ¶ 35), Plaintiff does not provide any detail regarding the "who, what, when, where, and how" of how <u>she</u> was allegedly deceived at Defendants' <u>Sherman Oaks retail location</u> in connection with <u>her</u> individual purchases. The Complaint conspicuously does not, for example, allege any specific representations (or misrepresentations) that Defendants' made to Plaintiff or any factual allegations specific to used products being restocked at the Sherman Oaks store. And even Plaintiff's general class allegations make no attempt to identify which of Defendants' "more than 20,000 products" were allegedly resold (alleging only that the practice was "widespread"), the stores at which the alleged restocking and any misrepresentations or omissions occurred (providing only an allegedly non-inclusive list of states), when the misrepresentations or omissions were made (alleging only that the practice may have occurred over the last three years) or what, precisely, the misrepresentations or omissions were. (Am. Compl. ¶¶ 14, 22, 34–35.)

Indeed, Plaintiff's undetailed suggestion that she may have been exposed to an allegedly deceptive practice merely because – according to inherently unreliable and anonymous social media posts – some other customers allegedly were deceived at other of Defendants' over 1,000 retail stores is exactly the type of vague speculation that Rule 9(b) protects against. *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 671 (N.D. Ill. 2016) ("Rule 9(b) also serves to protect a

defendant from the 'potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled.'").

*Second*, the Complaint violates the rule against group pleading by making no effort to differentiate between allegations against Ulta Beauty and against Ulta Salon, which Plaintiff concedes are separate corporate entities. (*See, e.g.*, Am. Compl. at 1; *id.* ¶¶ 11, 12, 75.) "A complaint must set forth what each person (or corporation) is accused of doing," and a "complaint based on a theory of collective responsibility must be dismissed." *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, 2017 WL 4269005, at *3 (N.D. Ill. Sept. 26, 2017). This is a fundamental requirement of even the ordinary Rule 8 notice pleading standards. *Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009). Group pleading is especially pernicious when (as here) the complaint alleges fraud and should be pled carefully and with particularity. *See Corson v. Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 1802709, at *3–4 (C.D. Cal. Apr. 24, 2013) (dismissing UCL and CLRA claims for using group pleading rather than pleading with particularity).

Plaintiff knows, from the same public filings she cites in the Complaint, that Ulta Beauty is a "holding company with no operations of [its] own" other than equity ownership of subsidiaries, such as Ulta Salon, and that any "operations are conducted entirely through [those] subsidiaries." (*See* Ulta Beauty, Inc. (Mar. 28, 2017) Form 10-K, p.22[3] (*cited* at Am. Compl. ¶ 14).) Nevertheless, in the first paragraph of her Complaint, Plaintiff defines "Ulta" and "Defendant" to mean both Ulta Beauty and Ulta Salon. (Am. Compl. at 1.) All substantive allegations of the Complaint are then alleged jointly against either "Ulta" or "Defendant." (*See, e.g., id.* ¶¶ 2, 5, 14, 36.) That is not enough – Ulta Beauty and Ulta Salon are entitled to know the specific allegations levelled against

---

[3] *Available at* www.sec.gov/Archives/edgar/data/1403568/000119312517099261/ d329810d10k.htm

each of them. *See Corson*, 2013 WL 1802709, at *3–4. It is not Ulta Beauty's and Ulta Salon's obligation to parse which allegations are against one of them, and which are against the other.

## IV.   EACH OF PLAINTIFF'S CLAIMS SUFFER FROM SPECIFIC DEFECTS

Finally, each of Plaintiff's claims suffer from additional defects that support dismissal under Federal Rule of Civil Procedure 12(b)(6). In order to state a claim, "the complaint 'must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'" *Indep. Tr. Corp. v. Stewart Info Servs. Corp.*, 665 F.3d 930, 934–35 (7th Cir. 2012). The allegations must be more than "merely consistent with" liability, they must push the likelihood of defendant's liability from "possible" to "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  None of Plaintiff's claims meets this standard.

### A.   Plaintiff Has Not Alleged Any Breach Of Implied Warranty

Plaintiff's implied warranty claim fails because she has not alleged any implied warranty that was breached. Among the elements to state a claim for breach of warranty, a plaintiff must plausibly allege that the product received "was not of the same quality as those generally acceptable in the trade, or was not fit for the ordinary purposes for which the product is used, or did not conform to the quality established by the parties' prior dealings or by usage of trade." *Andrade v. Pangborn Corp.*, 2004 WL 2480708, at *23 (N.D. Cal. Oct. 22, 2004).

Plaintiff's theory is that Defendants impliedly warranted that the products they sold to Plaintiff were new. (Am. Compl. ¶ 48.) But as discussed above (*supra* Section I), the products Plaintiff purchased from Defendants were new; Plaintiff has not alleged that any of the products she purchased were used. Accordingly, Plaintiff has not alleged that she suffered any breach of her alleged implied warranty. Failure to plausibly allege a breach is fatal to any claim for breach of implied warranty. *See Webb v. Carter's Inc.*, 272 F.R.D. 489, 499–500 (C.D. Cal. 2011) (dismissing implied warranty claim where plaintiff could not show harm).

### B. Unjust Enrichment Is Not An Independent Cause of Action

Plaintiff's claim for unjust enrichment fails because there is no such cause of action under California law. The majority view in California is that unjust enrichment is not a viable cause of action because it is "duplicative of relief already available under various legal doctrines." *CYBERsitter, LLC v. Google Inc.*, 905 F. Supp. 2d 1080, 1088 (C.D. Cal. 2012). And even courts that would allow an unjust enrichment claim still dismiss it when "a plaintiff has requested the same relief through other claims." *Chavez v. Nestle USA, Inc.*, 2011 WL 10565797, at *10 (C.D. Cal. Jan. 10, 2011) (unjust enrichment claim duplicative of UCL claim).

Plaintiff's claim should be dismissed because unjust enrichment is not an independent cause of action in California. But even if it were, the unjust enrichment claim here is premised on the same theory as Plaintiff's other claims (including its UCL and CLRA claims) – namely, that Plaintiff overpaid for cosmetics as a result of Defendants' alleged policy – and should be dismissed for that reason as well. (*Compare* Am. Compl. ¶¶ 58–59 *with* Am. Compl. ¶¶ 66–67, 75–78.)

### C. Plaintiff's UCL and CLRA Claims Fail

Plaintiff's claims under the California UCL, *see* CAL. BUS. & PROFS. CODE § 17200, and CLRA, *see* CAL. CIV. CODE § 1750, should also be dismissed because: (1) Plaintiff has not alleged any harm, and (2) Plaintiff has not alleged that she was subjected to "unfair" conduct.

*First*, Plaintiff does not allege that she suffered the required harm. Both the UCL and the CLRA require that a plaintiff establish personal injury or damage. *See* CAL. CIV. CODE § 1780(a) ("CLRA") ("Any consumer *who suffers any damage as a result* of the use or employment by any person of a method, act, or practice declared to be unlawful . . . ." (emphasis added)); CAL. BUS. & PROFS. CODE § 17204 ("UCL") (plaintiff must have "suffered *injury in fact and ha[ve] lost money or property as a result* of the unfair competition"). Accordingly, just as Plaintiff has failed to allege an Article III injury, she also failed to allege statutory harm under the UCL and CLRA.

14

*Second*, Plaintiff has not identified any allegedly "unfair" practice. Plaintiff alleges, in part, that Defendants' conduct violates the UCL because it is "unfair" under the statute. (Am. Compl. ¶ 67.) "[T]he word 'unfair' in [§ 17200 of the UCL] means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *See Mass. Casualty Ins. Co. v. Katz*, 2012 WL 12886215, at *8 (C.D. Cal. Oct. 17, 2012) (*citing Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999) and explaining that "the California Supreme Court would affirm that 'unfairness' claims [under the UCL] are for competitors challenging anticompetitive practices"). Because Plaintiff has not alleged any such conduct, Plaintiff's UCL claim for "unfair" competition should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Dismiss Plaintiff's Complaint.

Dated: March 9, 2018          Respectfully submitted,

Ulta Beauty, Inc. and Ulta Salon, Cosmetics & Fragrance, Inc.

By: *   /s/ Craig C. Martin*
         One of their attorneys

Craig C. Martin
Illinois Bar No. 6201581
Matt D. Basil
Illinois Bar No. 6242487
Paul B. Rietema
Illinois Bar No. 6300671
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
cmartin@jenner.com
mbasil@jenner.com
prietema@jenner.com
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

*Attorneys for Ulta Beauty, Inc. and Ulta
Salon, Cosmetics & Fragrance, Inc.*

## CERTIFICATE OF SERVICE

I, Paul B. Rietema, an attorney, certify that I caused copies of the foregoing ***Defendants'***

***Memorandum in Support of Their Motion to Dismiss the Amended Complaint*** to be served via

the electronic filing system of the Northern District of Illinois, which will automatically serve all

counsel of record.

                                       */s/ Paul B. Rietema*
                                       *Attorney for Ulta Beauty, Inc. and*
                                       *Ulta Salon, Cosmetics & Fragrance, Inc.*