UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KIMBERLY LAURA SMITH-BROWN, et al., individually and on behalf of all others similarly situated,** | )<br>)<br>)<br>) |
| Plaintiffs, | ) No. 18 C 610 |
| v. | )<br>) Magistrate Judge M. David Weisman |
| **ULTA BEAUTY, INC. and ULTA SALON, COSMETICS & FRAGRANCE, INC.,** | )<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs ask the Court to compel defendants to produce twenty-seven documents and a response to interrogatory 13 concerning defendants' internal investigation of the allegations in the complaint. Defendants contend that the information plaintiff seeks is privileged. For the reasons set forth below, the Court grants in part and denies in part plaintiff's motion to compel [177].

**Discussion**

**Documents**

Defendants contend that the documents at issue—nos. 53, 142, 143, 156, 157, 218, 235, 238, 254, 295, 319, 353, 355, 374, 390, 406, 412, 481, 511, 532, 539, 581, 607, 701, 702, 703, and 703(b) on their privilege log—are subject to the attorney-client and/or work product privileges. Plaintiffs argue that: (1) the log is not detailed enough to assess the privilege claims; (2) even if it is sufficiently detailed, defendants have not shown that the requested documents are subject to

1

either privilege; and (3) defendants have waived any privilege that might otherwise apply.

**Vagueness**

Plaintiffs argue that the document descriptions are too vague because they contain "boilerplate buzzwords" such as "in anticipation of litigation" or "reflects legal advice." (Pls.' Br., ECF 177 at 5.) If the descriptions were limited to those words, that would be problematic. *See Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 3624084, at *1 (N.D. Ill. Aug. 23, 2017) (documents described only as "[c]ommunication reflecting legal advice regarding anticipated litigation with Bosch" found insufficient). But here, in addition to the "buzzwords," the log contains a description of the documents. (*See, e.g.*, Pls.' Br., Ex. A, Privilege Log, ECF 177-1, Doc. 142 (described as "Communication reflecting work done as part of investigation performed at the request and direction of company counsel, in anticipation of litigation, and for the purpose of assisting with the provision of legal advice regarding social media allegations, such as compiling internal company communications to and from stores sent at the direction of company counsel, and gathering social media, media, customer, and/or former employee activity regarding social media allegations, which provided information regarding the company's investigation and company counsel's legal advice regarding company's response to social media allegations.").) Thus, defendants' use of "buzzwords" does not make the descriptions too generic.

Plaintiffs' second argument is that defendants' inclusion of "such as" in the descriptions renders them vague. The Court agrees. By using qualifiers like "such as" and "and/or" in the privilege log descriptions, defendants state what the subject of the documents *may be*, not what the subject is. Defendants are ordered to amend their log to remedy this problem within seven days of the date of this Memorandum Opinion and Order.

**Work Product**

Defendants contend that all twenty-seven of the documents are protected work product because they were prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3)(A) ("[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless "they are otherwise discoverable under Rule 26(b)(1)" and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."); (Defs.' Resp., ECF 191 at 11-17; *id.*, Ex. 1, Caro Decl., ECF 191-1 ¶¶ 8-10). According to the Seventh Circuit, a dual purpose document, one prepared in anticipation of litigation and for another purpose as well, is work product only if "'the primary motivating purpose behind [its] creation" is "to aid in possible future litigation.'" *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C.1982)). "Materials created in the ordinary course of business which may have the incidental effect of being helpful in litigation are not privileged under the work product doctrine." *Lynk Labs, Inc. v. Juno Lighting LLC*, No. 15 C 4833, 2016 WL 6135711, at *2 (Oct. 21, 2016) (quotation omitted); *Long v. Anderson Univ.*, 204 F.R.D. 129, 136 (S.D. Ind. 2001) ("[D]ocuments created as a result of the discovery opponent's ordinary course of business that would have been created irrespective of litigation are not under the protection of the work product doctrine.") (quotation omitted).

Defendants contend that "the predominant purpose [for creating the contested documents] was because of anticipated litigation." (Defs.' Resp. at 7) (emphasis omitted). In support of that contention, defendants submit a declaration from their General Counsel, Jodi Caro. Ms. Caro states that she "decided Legal Services need to lead the investigation into the social media

3

allegations in order to: gather information for Legal Services' use and benefit in providing informed legal advice to the company, ensure that the investigation proceeded in a way that was coordinated with the company's litigation strategy, and assess the company's position in anticipated litigation." (Defs.' Resp., Ex. 1, Caro Decl., ECF 191-1 ¶ 8.) She also says that "[a] Legal Services-led investigation is *not* the company's typical response to complaints or issues raised by customers or former employees. Such an investigation only occurs when Legal Services concludes that there is a potential legal issue that poses risk to the company, including the threat of, or likelihood of, litigation, and requires legal advice." (*Id.* ¶ 10) (emphasis in original). After reviewing the contested documents in conjunction with Ms. Caro's declaration, the Court finds that the documents are work product.

Even if that is true, plaintiffs argue that the exception to the work product doctrine applies because they are seeking "the underlying facts learned by Ulta in that investigation" and "have no other means to obtain this information other than through Ulta's own employees and the investigation materials." (Pls.' Br., ECF 177 at 18.) But work product does not shield facts, *see*, *Lynk Labs.*, 2016 WL 6137511, at *1 ("[T]he work product doctrine does not protect bare facts."), so plaintiffs can obtain through depositions the facts Ulta uncovered in its investigation. Because plaintiffs can obtain the information they seek without production of defendants' work product, the exception to the doctrine does not apply.

**Attorney Client Privilege**

Defendants claim that nineteen of the twenty-seven documents (53, 142, 143, 157, 218, 235, 238, 254, 295, 319, 353, 374, 390, 532, 539, 581, 607, 701, and 703(b)) are also protected by the attorney client privilege. About this privilege, the Illinois Supreme Court has said: "[W]here legal advice of any kind is sought from a professional legal advisor in his capacity as such, the

4

communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or the legal adviser, except the protection be waived." *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 727 N.E.2d 240, 243 (2000); *see* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").

Plaintiffs argue that the privilege does not apply because defendants "undertook the review primarily for marketing and public relations, not for the purpose of providing legal advice." (Pls.' Br., ECF 177 at 7); *see Nucap*, 2017 WL 3624084, at *2 ("[C]onfidential communications with a lawyer about business or other non-legal matters are not privileged."); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) ("[T]he privilege will not apply where the legal advice is incidental to business advice."). If, however, the documents contain "legal advice relating to business matters," the privilege applies. *Marusiak v. Adjustable Clamp Co.*, No. 01 C 6181, 2003 WL 21321311, at *2 (N.D. Ill. June 5, 2003).

Plaintiffs say that, as with work product, Seventh Circuit law requires defendants to show that the primary purpose of the contested documents was to render or solicit legal advice for the attorney client privilege to apply. (Pls.' Reply, ECF 196 at 1-3.) However, they do not cite, and the Court could not find, a Seventh Circuit case with that holding.

Absent binding precedent, the Court turns to cases from other circuits for guidance. The Second, Fifth, Sixth, and D.C. Circuits all use the predominant purpose test, *see Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015); *In re Kellogg Brown & Root*, 756 F.3d 754, 759-60 (D.C. Cir. 2014); *In re Cnty of Erie*, 473 F.3d 413, 420 (2d Cir. 2007); *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997), which the D.C. Circuit has described as follows:

5

> [T]he primary purpose test, sensibly and properly applied, cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other. After all, trying to find the one primary purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task. It is often not useful or even feasible to try to determine whether the purpose was A or B when the purpose was A and B. It is thus not correct for a court to presume that a communication can have only one primary purpose. It is likewise not correct for a court to try to find the one primary purpose in cases where a given communication plainly has multiple purposes. Rather, it is clearer, more precise, and more predictable to articulate the test as follows: Was obtaining or providing legal advice a primary purpose of the communication, meaning one of the significant purposes of the communication? As the Reporter's Note to the Restatement says, "In general, American decisions agree that the privilege applies if one of the significant purposes of a client in communicating with a lawyer is that of obtaining legal assistance." 1 Restatement § 72, Reporter's Note, at 554. We agree with and adopt that formulation—"one of the significant purposes"—as an accurate and appropriate description of the primary purpose test. Sensibly and properly applied, the test boils down to whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communication.

*Kellogg*, 756 F.3d at 759-60; *see FTC v. Boehringer Ingelheim Pharm., Inc.*, 892 F.3d 1264, 1267-68 (D.C. Cir. 2018) (same).

The Court finds this analysis persuasive. Thus, defendants must show that "obtaining or providing legal advice was one of the significant purposes of the [contested documents]" to invoke the attorney client privilege for them. With this principle in mind, and having reviewed the documents in conjunction with Ms. Caro's declaration, the Court concludes that documents 53, 142, 143, 157, 254, 295, 319, 353, 374, 390, the first page of 532, 539, the first page of 607, and 703(b) are subject to the attorney client privilege for the following reasons:

**Document 53:** This document is an email "sent from leadership in Store Operations to their Regional Vice Presidents, District Managers, and General Managers." (Defs.' Resp., Ex. 1, Caro Decl., ECF 191-1 ¶ 16a.) Ms. Caro says she "communicated directly with [the author] regarding the contents of . . . [the] email . . . , and provided revisions to a draft" (*id.*), which suggests the email reflects legal advice. Thus, it is subject to the attorney client privilege.

**Documents 142 & 143:** Document 142 is an email enclosing document 143, a compilation of information that was created at Ms. Caro's direction by Senior Vice President, Ms. Frankenrider, and Senior Manager, Ms. Yamanaka. (*Id.* ¶ 17.) Because these documents were created to obtain legal advice, they are subject to the attorney-client privilege.

**Document 157:** This is an email from Ms. Caples, Guest Services Advocate, to HR "in which Ms. Caples selects and escalates specific social media allegations from a former employee and requests information from Ms. Byrne and Ms. Sandifer, who I had charged with conveying my legal advice." (*Id.* ¶ 19a.) Because this document seeks legal advice it is subject to the attorney client privilege.

**Document 254:** Ms. Caro describes this document as "emails from Ms. Yamanaka to certain Regional Vice Presidents and District Managers . . . providing them with legal advice and instruction, given to Ms. Yamanaka by Legal Services, on communicating with store teams and gathering compliance information." (*Id.* ¶ 18a.) Because the document contains legal advice, it is privileged.

**Documents 319 & 353:** Document 319 is an email from Karen May, Director of Public Relations, to employees in Store Operations and HR, and Document 353 is an email from Ms. May to employees in HR, directing them to investigate and gather information in response to a media inquiry. (*Id.* ¶¶ 21-22a.) Ms. Caro says these emails reflect her instructions to Ms. May. (*Id.* ¶ 22.) Thus, they are privileged.

**Documents 374 & 390:** These documents are emails Senior Director McCabe sent to Regional Vice Presidents and certain District Managers. (*Id.* ¶ 24.) Ms. Caro says she communicated with McCabe about the contents of the emails, made revisions to them, and ultimately approved them.

7

(*Id.*) Though she does not explicitly say that these documents contain legal advice, that is a reasonable inference that can be drawn from the contents of the emails and her declaration.

**Documents 295, 532, & 607:** Ms. Caro says she gave Guest Services legal advice on handling customer complaints and directed Guest Services to pass the advice along to employees in other business groups. Document 295 is a January 18, 2018 email from a District Manager to Guest Services asking how to handle a customer complaint. (*Id.* ¶ 26a.) Document 532 are emails dated January 30, and 31, 2018, "among a Senior Vice President, a Regional Vice President, Guest Services, and Ms. May regarding the handling of a customer complaint." (*Id.* ¶ 26b.) Document 607 is a February 16, 2018 email from a Regional Vice President to Guest Services regarding the handling of a customer complaint. (*Id.* ¶ 26c.) Because the emails, *i.e.*, document 295 and the first pages of documents 532 and 607, reflect legal advice, they are privileged. The attachments to the first pages of 532 and 607, which is correspondence between customers and defendants' Guest Services personnel, are not privileged.

**Document 539:** This document is a January 31, 2018 email from Jeremy Hojnicki, Senior Compliance Manager, to employees in Store Operations and Loss Prevention that "reflects a legal recommendation that originated from Mr. Lentz, Senior Counsel in Legal Services, about the company's damage bin labels." (*Id.* ¶ 30.) This document is privileged.

**Document 703(b):** This document "reflect[s] information compiled in connection with [Ms. Caro's] requests and for company counsel's review in assessing the company's position in the litigation." (*Id.* ¶ 31b.) Because this document was created to obtain legal advice, it is privileged.

**Waiver**

Plaintiffs argue that defendants have waived any privilege that might otherwise apply because they voluntarily disclosed "various aspects surrounding their internal review to the public

on their website, as well as their internal policies and procedures and the steps they were taking," which are "among the very issues being raised in the log." (Pls.' Br., ECF 177 at 19.) Plaintiffs do not, however, identify the documents on the log that they contend defendants voluntarily disclosed. Absent that information, the Court cannot conclude that waiver occurred.

Alternatively, plaintiffs say that defendants waived any privilege by putting the privileged communications at issue in the suit. (*Id.*); *see Monco v. Zoltek Corp.*, No. 17 C 6882, 2018 WL 4917817, at *3 (N.D. Ill. Oct. 10, 2018) ("The Illinois Supreme Court has recognized that both the attorney-client privilege and the work-product privilege may be waived as to a communication put 'at issue' by a party who is a holder of the privilege in . . . ."). Again, however, plaintiffs do not explain how defendants put any privileged document at issue. *See Monco*, 2018 WL 4917817, at *4 ("So, the question becomes what issues are the defendants raising that require resort to disclosure of the emails at issue here? Are the defendants using these communications or communications like them as a "sword and a shield" such that allowing them to maintain the privilege over the emails at issue would be unfair?"). Without that information, the Court cannot conclude that any waiver occurred.

**Interrogatory 13**

This interrogatory asks defendants to:

> Identify each employee of Defendants who participated in any way in the "internal review" referred to on Ulta's Customer Website (https://www.ulta.com/policy-againstreselling-used-makeup/) regarding Ulta's "re-selling of used, damaged or expired products," and the dates of any such participation, including but not limited to each employee who performed any investigation or interview, and each current or former employee interviewed, in connection with such "internal review."

(Pls.' Br., Ex. D, ECF 177-4 at 9.) Ulta refused to answer this interrogatory, citing a variety of objections, including relevance, burden, and that the requested information is protected by the attorney client or work product privileges. (*Id.*, Ex. E, ECF 177-5 at 14.) After the parties

9

conferred, "Plaintiffs informed Ulta that they intended to move to compel a response only with respect to that portion of the Interrogatory which seeks the identity of who was interviewed and when," but "Ulta refused to produce this information and continued to stand on its objections." (Pls.' Br., ECF 177 at 21.)

The relevance and burden objections are unfounded. The information sought would identify people with knowledge of the allegations in this case, and defendants do not say why producing this information would be unduly burdensome. Moreover, the attorney client privilege does not apply because plaintiffs are seeking facts, not communications. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").

That leaves work product. Defendants say plaintiffs' request for a list of interviewees does not seek facts but "seeks to uncover *how* Ulta Salon conducted its privileged investigation and prepared for this and other litigation." (Defs.' Br., ECF 191 at 19) (emphasis in original). Defendants cite *Tracy v. NVR, Inc.*, 250 F.R.D. 130 (W.D.N.Y 2008), which in turn cites cases from other jurisdictions, and *Board of Education of Evanston Township High School District No. 22 v. Admiral Heating & Ventilation, Inc.*, 104 F.R.D. 23 (N.D. Ill. 1984), in support of their argument. Though acknowledging that there are cases that go both ways, the *Tracy* court said: "The better reasoned decisions, in my estimation, are those that draw a distinction between discovery requests that seek the identification of persons with knowledge about the claims or defenses (or other relevant issues)—requests that are plainly permissible—and those that seek the identification of persons who have been contacted or interviewed by counsel concerning the case." *Id.* at 132. Similarly, the *Admiral* court said:

> [The] legitimate concern [of an interrogatory asking for identification of anyone defendant interviewed concerning the issues in the suit] is with the identification of persons who have *knowledge* "concerning meetings, discussions or communications among officers or employees of any competitors with regard to piping construction bids, pricing, customers or territories." To go beyond that—to tell plaintiffs whom defendants have interviewed, where and when such interviews took place and whether or not a record was made—is to give plaintiffs no more knowledge of substantive relevant facts, but rather to afford them the potential for significant insights into the defense lawyers' preparation of their case (and thus their mental processes).

104 F.R.D. at 32 (emphasis in original).

For their part, plaintiffs cite *EEOC v. Jewel Food Stores, Inc.*, 231 F.R.D. 343 (N.D. Ill. 2005) in which the court overruled defendant's work product objection to an interrogatory asking for identification of "each person from whom Defendant has obtained a statement, affidavit or the like, written or otherwise, concerning any act, circumstance or event related to any claims or defenses in this case and for each such statement provide the substance of the statement and identify the custodian thereof." *Id.* at 345-47. The court said, "the fact that Jewel (or its counsel) has talked to certain persons who are potential witnesses, without more, reveals little or nothing about which witnesses Jewel considers important." *Id.* at 347. In the *Jewel* court's view, "a discovery request that asks who has been interviewed and what they said [does not] run[] afoul of the work product protection, at least where the request does not ask who conducted the interview." *Id.* Because the EEOC's interrogatories did not "ask whether it was Jewel's lawyers or instead someone else at Jewel who . . . took statements from [persons with knowledge] . . . concerning the claims or defenses in the case," it did not invade work product. *Id.*

Here, unlike in *Jewel*, the investigation was done by defendants' lawyers. Thus, interrogatory 13 is asking defendants to identify the people their lawyers selected to interview, *i.e.*, to reveal their lawyers' mental processes. That is an impermissible invasion of work product.

11

Even if the interrogatory calls for work product, plaintiffs say they need the information "to identify witnesses with knowledge about the underlying facts of the investigation," and have no other way to obtain it. (Pls.' Br., ECF 177 at 24.) But plaintiffs can get that information simply by asking defendants to identify witnesses with knowledge about the underlying facts of the investigation. Because plaintiffs can obtain the information they say they need without defendants' work product, their motion to compel an answer to interrogatory 13 is denied

### Conclusion

For the reasons set forth above, the Court grants in part and denies in part plaintiff's motion to compel [177]. Defendants are ordered to amend their privilege log to remove the qualifiers "such as" and "and/or" from the document descriptions, so each description states what the subject of the document is, not what the subject may be, within seven days of the date of this Memorandum Opinion and Order.

**SO ORDERED.**                            **ENTERED: June 27, 2019**

**M. David Weisman**
**United States Magistrate Judge**